

# THE ATTORNEY GENERAL
## OF TEXAS

January 16, 1989

**JIM MATTOX**
**ATTORNEY GENERAL**

Mr. Sam H. Smith
Executive Director
Board of Tax Professional
   Examiners
P. O. Box 15920
Austin, Texas   78761-5920

Opinion No. JM-1008

Re: Whether appraisers employed by the State Property Tax Board must register with the Board of Tax Professional Examiners (RQ-1495)

Dear Mr. Smith:

Article 7244b, V.T.C.S., the Property Taxation Professional Certification Act, creates the Board of Tax Professional Examiners [hereinafter the BTPE], V.T.C.S. art. 7244b, § 4, and reposes in the BTPE the duty, <u>inter alia</u>, to "insure strict compliance with and enforce all provisions of this Act." <u>Id.</u> § 7. The act requires certain persons to register with the BTPE and to proceed toward certification. You ask whether field appraisers employed by the State Property Tax Board for the purpose of conducting the annual property value studies for appraisal districts and school districts must register with your board. We answer your question in the negative.

Section 11 of article 7244b, V.T.C.S., lists those persons who are required to register with the board:

> (1) all chief appraisers, appraisal supervisors and assistants, property tax appraisers, appraisal engineers, <u>and other persons with authority to render judgment on, recommend, or certify appraised values to the appraisal review board of an appraisal district;</u>

> (2) the tax assessor-collector, tax collector, or other person designated by the governing body of a taxing unit as the chief administrator of the unit's assessment functions, collections functions, or both; and other persons who perform assessment or collections functions for the unit whom the

chief administrator of the unit's tax office requires to register; and

(3) <u>all persons engaged in appraisals of real or personal property for ad valorem tax purposes for an appraisal district or a taxing unit.</u> (Emphasis added.)[1]

You point out that the act was passed prior to the addition of field appraisers to the staff of the State Property Tax Board and accordingly does not address directly whether these persons should register. Though you do not indicate which subsection of section 11 requires, in your opinion, the registration of the State Property Tax Board's field appraisers, we assume that you base your request upon either the underscored language of subsection (1) or subsection (3).[2] In other words, we understand you to assert

---

1. In addition, section 15 of the act sets forth the qualifications of applicants and provides:

An applicant must be at least 18 years of age, a resident of the State of Texas, a person of good moral character <u>and actively engaged in appraisal, assessment, or collection for a taxing unit.</u> (Emphasis added.)

2. Subchapter A of chapter 24 of the Tax Code confers on the State Property Tax Board the responsibility of appraising the intangible value of the transportation operation in this state of certain listed transportation businesses. Additionally, subchapter B of chapter 24 of the Tax Code confers on the State Property Tax Board the responsibility of appraising railroad rolling stock. The State Property Tax Board annually certifies to each county tax assessor-collector the property values, apportioned to each county, of the businesses appraised pursuant to chapter 24 that operate in each county. We have been informed that those employees of the State Property Tax Board who conduct such appraisals register with the BTPE pursuant to subsection (1) of section 11 because they are "persons with authority to render judgment on, recommend, or certify appraised values to the appraisal review board of an appraisal district." No other provisions of the code confer
(Footnote Continued)

that, by virtue of the valuation and ratio studies that the State Property Tax Board annually conducts, the field appraisers of the State Property Tax Board are either "persons with authority to render judgment on, recommend, or certify appraised values to the appraisal review board of an appraisal district" or "persons engaged in appraisals of real or personal property for ad valorem tax purposes for an appraisal district or a taxing unit."

The Tax Code created the State Property Tax Board and conferred upon it a wide variety of duties, most of which do not even arguably fall within the ambit of section 11 of article 7244b, V.T.C.S. We will turn to each Tax Code provision that does arguably fall within section 11 to examine whether that section confers authority on the State Property Tax Board or its employees to perform duties that would require persons performing those duties to register with the BTPE.

First, section 5.08 of the Tax Code authorizes the State Property Tax Board to provide certain assistance to appraisal districts and appraisal review boards:

> (a) The board may provide professional and technical assistance on request in appraising property, installing or updating tax maps, purchasing equipment, developing record-keeping systems, or performing other appraisal activities. The board may also provide professional and technical assistance on request to an appraisal review board. The board may require reimbursement for the costs of providing the assistance.
>
> (b) The board may provide information to and consult with persons actively engaged in appraising property for tax purposes about any matter relating to property taxation without charge.

Next, section 11.86 of the Education Code requires the State Property Tax Board to conduct an annual study to

_____

(Footnote Continued)
authority on employees of the State Property Tax Board to appraise property directly for appraisal districts or taxing units.

determine the total taxable value of property in each school district in the state. Subsection (a) of section 11.86 provides in part:

> (a) The board shall conduct an annual study using comparable sales and other generally accepted techniques to determine the total value of all taxable property in each school district. The study shall determine the taxable value of all property and of each class of property within the district and the productivity value of all land that qualifies for appraisal on the basis of its productive capacity and for which the owner has applied for and received a productivity appraisal. In conducting the studies, the board shall use appropriate standard valuation, statistical compilation, and analysis techniques.

Section 11.86 requires the State Property Tax Board to publish its preliminary findings, listing values by school district, and to deliver the findings to each school district. The section further confers on each school district a right of administrative appeal of the findings, as well as a right of appeal to a state district court, of the results of the administrative appeal. The findings of the State Property Tax Board are utilized by the Commissioner of Education in determining the local fund assignment under the Foundation School Program. See Educ. Code, § 16.252.

Next, section 5.10 of the Tax Code imposes on the State Property Tax Board the duty to conduct annually what are termed "ratio studies":

> (a) The board shall conduct an annual study in each appraisal district to determine the degree of uniformity of and the median level of appraisals by the appraisal district within each major kind of property. The board shall publish a report of the findings of the study, including in the report the median levels of appraisal for each major kind of property, the coefficient of dispersion around the median level of appraisal for each major kind of property, and any other standard statistical measures that the board considers appropriate. In conducting the

> study, the board shall use appropriate
> standard statistical analysis techniques.
>
> (b) The published findings of a ratio
> study conducted by the State Property Tax
> Board shall be distributed to all members of
> the legislature and to all appraisal dis-
> tricts.

We note here that chapters 41 and 42 of the Tax Code afford various remedies to both aggrieved taxpayers and aggrieved taxing units. For example, section 41.03 of the code permits a taxing unit to appear before an appraisal review board and challenge, inter alia, the level of appraisals of any category of property in the district or in any territory within the district. Section 41.41 of the Tax Code permits a taxpayer to appear before the appraisal review board and protest, inter alia, unequal appraisal of his property in comparison to the median level of appraisals of other property in the appraisal district.

Finally, section 5.12 of the Tax Code authorizes the State Property Tax Board, under certain circumstances, to conduct performance audits of appraisal districts that may comprise either "a general audit of the performance of the appraisal district" or "an audit of only one or more partic- ular duties, practices, functions, departments, or other appraisal district matters," i.e. a limited audit. Tax Code, §§ 5.12(a), (b).[3] Subsection (a) authorizes either the governing bodies of a majority of the taxing units participating in an appraisal district or a majority of the taxing units entitled to vote on the appointment of apprais- al district directors to request an audit. Subsection (b) authorizes property owners under certain circumstances to request an audit.

---

3. Section 5.12 of the Tax Code specifically was made effective on January 1 of the first state fiscal year for which state funds are appropriated for funding the administration of the section. Acts 1987, 70th Leg., ch. 860, § 3, at 2928. The legislature appropriated funds for the implementation of this section in the appropriations act adopted in 1987. Acts 1987, 70th Leg., 2d C.S., ch. 78, art. I, at 504.

Subsection (c) of section 5.12 governs limited audits and provides in part:

> The board may not be required to audit the financial condition of an appraisal district or to audit a district's tax collections. If the request is for an audit limited to one or more particular matters, the board's audit must be limited to those matters.

Subsection (d) governs general audits and provides:

> In conducting a general audit, the board shall consider and report on:
>
> (1) The extent to which the district complies with applicable law or generally accepted standards of appraisal or other relevant practice;
>
> (2) the uniformity and level of appraisal of major kinds of property and the cause of any significant deviations from ideal uniformity and equality of appraisal of major kinds of property;
>
> (3) duplication of effort and efficiency of operation;
>
> (4) the general efficiency, quality of service, and qualification of appraisal district personnel; and
>
> (5) except as otherwise provided by Subsection (c) of this section, any other matter included in the request for the audit.

The issue is whether the statutory duties of the State Property Tax Board fall within the ambit of section 11 of article 7244b, V.T.C.S.

First, section 2(1) of article 7244b, V.T.C.S., defines "appraisal" in the following way:

> 'Appraisal' means those functions described in Chapters 23 and 25, Tax Code, that are performed by employees of political subdivisions or <u>by persons acting on behalf of political subdivisions and that involve an</u>

> estimate or opinion  of value  of a  property
> interest.  (Emphasis added.)

See also  id. § 2(2)  (definition of  "assessment").  Thus, subsection 11(3)  applies to  persons  acting on  behalf  of political subdivisions who perform those functions described in chapters 23 and 25 of the Tax Code.

Section 5.08 of the Tax Code provides that employees of the State Property Tax Board, inter alia, may provide "technical assistance" to appraisal districts or appraisal review boards.  Section 11.86  of the Education  Code requires  the State Property Tax Board to conduct annual ratio studies for purposes of  allocating state  and  local funds  for  public school purposes.  Section 5.10 of the Tax Code requires  the State Property Tax Board to  conduct ratio studies for  each appraisal  district, with  the  studies used  by  either aggrieved taxing units or  aggrieved taxpayers seeking  remedies for unlawful taxation.  Section  5.12 of the Tax  Code permits the State Property Tax Board to conduct "performance audits" of  appraisal districts  at the  written request  of either a majority of the  taxing units participating in  the appraisal district or  a sufficient number  of taxpayers  in that district.  In each  instance, employees  of the  State Property Tax Board are required to perform certain  services or conduct  certain  studies, the  purpose  of which  is  to provide a means for evaluating the professional  performance of the appraisal districts' or the taxing units'  employees. The Tax Code, with the aforementioned exception set forth in chapter 24,  does not  require the  employees  of  the  State Property Tax Board to  perform the  actual  functions  of appraising, assessing, or collecting  required by law.  See Tex. Const. art. VIII, § 23.[4]  Thus, they are not  included within subsection 11(1) of article 7244b, V.T.C.S.

Second, even  if  the  actual language  of  section  11 fairly could be said to  be ambiguous on this question,  the

---

4.  Subsection (a)  of  section  23  of  article  VIII provides:

> There shall be  no statewide appraisal  of
> real property  for ad  valorem tax  purposes;
> however,  this  shall  not  preclude  formula
> distribution of  tax  revenues  to  political
> subdivisions of the state.

intent of the legislature in passing article 7244b, V.T.C.S., could not be more clear. Section 1 of article 7244b, V.T.C.S., sets forth the purpose of the act and provides in pertinent part:

> The purpose of the legislature by this Act is to assure the people of Texas that the responsibility of assessing property for taxation is entrusted only to those persons duly registered and competent according to the regulations provided by this Act. The legislature further intends that the assessing of property for taxation be practiced and regulated as a learned profession and that the practitioners in this state be accountable to the public.

The bill analysis for Senate Bill No. 67, which enacted article 7244b, V.T.C.S., in 1977, declares in its "Background" section: "This bill would enact new legislation relating to the registration and certification of persons engaged in the assessment of property for ad valorem taxation." Bill Analysis, S.B. 67, 65th Leg. (1977). The stated purpose of the bill, in addition to creating the board, is "to regulate persons engaged in the assessment of property for taxation purposes." Id. Section 11 was amended in 1981 to change the definitions of persons required to register in order to conform to language in the Tax Code. House Bill No. 2189 amended definitional language in the act. Acts 1981, 67th Leg., ch. 848, at 3224. The amendment assures that persons performing certain functions regardless of the titles by which such persons are designated register with the board:

> (1) Tax assessor means the person responsible for assessing property taxes as set forth by Chapter 26, Property Tax Code.
>
> (2) Chief appraiser means the chief administrator of the appraisal district office.
>
> (3) Property tax appraiser means a person duly registered to engage in all or part of the appraisal process required to estimate the appraised value of property.

(4) Practice of assessing means to engage in any or all phases of the assessing process including appraisal.

Bill Analysis, H.B. 2189, 67th Leg. (1981).

It is clear that the legislature intended with the original enactment of article 7244b, V.T.C.S., to require the registration and certification of tax assessor-collectors in Texas. With its subsequent amendment, it is clear that the legislature intended those persons to register, regardless of title, who are engaged in what is now termed "appraisal," as well as assessing and collecting, as defined in the code. The purpose of the act is to ensure a sufficient level of competence and professionalism among those who are involved with the ad valorem taxation system on a local level.

We recognize that it may seem anomalous to require appraisers and collectors who are actually employed by appraisal districts or taxing units to register with the BTPE and proceed toward certification, while not requiring to register the field appraisers of the State Property Tax Board, whose advice and technical assistance the districts and taxing units rely upon and whose various ratio studies are used as a standard in terms of which appraisal districts' and taxing units' performances can be evaluated. Any such anomaly properly is a concern for the legislature.

Accordingly, we conclude that the field appraisers employed by the State Property Tax Board to perform those duties imposed upon it by law are not required to register with and proceed toward certification by the Board of Tax Professional Examiners.

### S U M M A R Y

The field appraisers employed by the State Property Tax Board are not required to register with and to proceed toward certification by the Board of Tax Professional Examiners.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General